UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x     ECF Case
SCOTT GLASGOW,

08-CV-3578 (JSR)

                                    Plaintiff,

            -against-                                            **ANSWER AND DEFENSES**

GROWING GENERATIONS, LLC,
FERTILITY FUTURES, LLC,
STUART MILLER, GAIL TAYLOR,
KIM BERGMAN, WILLARD K. HALM,
TEO MARTINEZ and VICKEN SAHAKIAN,

                                    Defendants.
-----------------------------------------------------------x

Defendants GROWING GENERATIONS, LLC and FERTILITY FUTURES

INTERNATIONAL, LLC[a] (collectively "GG/FF" or "Defendants"), by way of a response to the

Complaint herein, provide the following:

**AS TO PARTIES, JURISDICTION AND NATURE OF ACTION**

1.      Deny the allegations set forth in paragraph "1" except aver that they lack knowledge or

information sufficient to form a belief as to the truth of the assertions regarding Plaintiff's

current residence.

2.      Admit the allegations set forth in paragraph "2".

3.      Admit that Stuart Miller ("Mr. Miller") is the CEO of GG/FF as asserted in paragraph "3"

but deny that Mr. Miller was Plaintiff's direct supervisor or that he supervised Plaintiff's work.

4.      As to paragraph "4", deny that GG/FF has ever had a policy which mandates that their

employees attend Landmark Education sessions, or any educational or instructional seminars, but

admit that Gail Taylor is the President of GG/FF.

---

[a] Incorrectly sued here as "Fertility Futures, LLC"

5.      As to paragraph "5", deny that GG/FF has ever had a policy which mandates that its employees attend Landmark Education sessions, or any educational or instructional seminar, but admit that Kim Bergman is a co-owner of GG/FF.

6.      As to paragraph "6", deny that GG/FF has ever had a policy which mandates that its employees attend Landmark Education sessions, or any educational or instructional seminar, but admit that Willard K. Halm is the Chair of GG/FF.

7.      As to paragraph "7", deny that GG/FF has ever had a policy which mandates that its employees attend Landmark Education sessions, or any educational or instructional seminar, but admit that Teo Martinez is the Chief Operating Officer of GG/FF.

8.      Deny the truth of the allegations set forth in paragraph "8".

9.      Deny the truth of the allegations set forth in paragraph "9".

10.     Except to state that Plaintiff purported to file a charge of discrimination with the EEOC on January 15, 2008, as alleged in paragraph "10", deny that this charge was timely filed as to all or any part of the claims asserted by Plaintiff in the Complaint.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the assertions contained within paragraph "11", and to the extent that these assertions constitute conclusions of law, no response is required.

12.     As to the allegations set forth in paragraph "12", they require no response as they contain legal argument. To the extent a response is required, Defendants deny that they have engaged in any wrongdoing in violation of any of the laws Plaintiff cites, or any other federal, state or local law, or otherwise.

13.     As to allegations set forth in paragraph "13", assert that these allegations constitute

conclusions of law as to which no response is required.

14.     As to the assertions set forth in paragraph "14", assert that these allegations constitute

conclusions of law as to which no response is required. To the extent a response is required,

Defendants deny any wrongdoing and deny that the majority of the unlawful practices alleged in

the Complaint occurred within this judicial district.

## AS TO JURY DEMAND

15.     Admit that Plaintiff purports to demand a trial by jury as set forth in paragraph "15".

## AS TO BACKGROUND AND FACTS

16.     In response to the allegations set forth in paragraph "16" and footnotes, Defendants state

that Plaintiff began providing services to GG/FF on or about May 1, 2004, through Plaintiff's

production company, Segway Productions; that they hired Plaintiff as an independent contractor

for which he received a weekly retainer of $500 and that Plaintiff remained an independent

contractor throughout his tenure with GG/FF; that Plaintiff was provided with an occasional

incentive bonus but did not participate in GG/FF's employee bonus program since Plaintiff was

not an employee of GG/FF. Except as expressly stated herein, Defendants deny the allegations

set forth in paragraph "16".

17.     Deny the allegations set forth in paragraph "17".

18.     Except to admit that on rare occasions, Mr. Miller had complimented aspects of

Plaintiff's work, deny the remaining allegations in paragraph "18".

19.     In response to the allegations set forth in paragraph "19" and footnotes, Defendants state

that Plaintiff was not promoted to the position of "Director of Marketing" but merely assigned

3

that purely cosmetic title at Plaintiff's behest in order to assist Plaintiff in his consulting work for GG/FF and enhance his negotiations with media outlets, vendors and potential partner organizations; that assigning Plaintiff the title of "Director of Marketing" did not alter Plaintiff's duties or the manner in which he performed his duties in any way and that Plaintiff remained an independent contractor for GG/FF; that throughout his tenure with GG/FF, Plaintiff billed and invoiced Defendants $4000 per month for his consulting services through his company, Segway Productions. Defendants deny that Plaintiff participated in its executive employee bonus program given that Plaintiff was not an employee of GG/FF but state that Plaintiff did occasionally receive an incentive bonus from GG/FF. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "19".

20.     Deny the truth of the allegations set forth in paragraph "20" and aver that either in late June or early July 2006, Plaintiff telephoned Mr. Miller and said that he could no longer provide services for GG/FF, that he could not take the stress of running his own company and claimed that he had been hospitalized.

21.     Deny the allegations set forth in paragraph "21" and footnotes and aver that approximately one week after the conversation referenced in paragraph "20" of the Complaint, Plaintiff called Mr. Miller to apologize, to admit that he had a drug dependency problem with Crystal Meth and to state that he wanted to resume his consultancy work for GG/FF; that in response, Defendants agreed to continue working with Plaintiff and Segway Productions.

22.     Deny the allegations set forth in paragraph "22".

## AS TO THE SECTION ENTITLED "SEXUAL HARASSMENT."

23.    Deny the allegations set forth in paragraph "23" and state that at all relevant times, Mr. Miller and Plaintiff maintained a professional working relationship and a close but purely platonic friendship of extended duration.

24.    In response to the allegations set forth in paragraph "24", Defendants state that Plaintiff and Mr. Miller shared a large suite during a "Vision Cruise" attended by certain consultants and employees of GG/FF; that this suite contained two twin beds plus a full-sized couch; that Mr. Miller and Plaintiff each occupied their own twin bed and never shared a bed; that Mr. Miller asked Plaintiff if he wanted to share a suite with him during the cruise and that Plaintiff expressed his willingness to share this suite with Mr. Miller; that all of Defendants' employees or consultants who attended this cruise also shared suites with at least one other co-worker or consultant with the sole exception of Teo Martinez, whose intended roommate cancelled at the last minute. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "24".

25.    Deny the allegations set forth in paragraph "25", and aver that Plaintiff was given the option to choose alternative lodging arrangements during the cruise but never did so and, instead, Plaintiff stated how happy and content he was to share a suite with Mr. Miller throughout the cruise.

26.    In response to the allegations set forth in paragraph "26", Defendants assert that during the referenced trip to New Orleans, Mr. Miller and Plaintiff each occupied a separate bedroom and living room in a large suite and never shared a bed together. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "26".

5

27.    Defendants deny the allegations set forth in paragraph "27".

28.    Defendants deny the allegations set forth in paragraph "28".

29.    Defendants deny the allegations set forth in paragraph "29".

30.    In response to the allegations set forth in paragraph "30", Defendants state that Mr. Miller complemented Plaintiff about his work on occasion and that both Plaintiff and Mr. Miller occasionally expressed to each other the importance of their platonic friendship**.** Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "30".

31.    In response to the allegations set forth in paragraph "31", Defendants state that the photo referenced by Plaintiff in said paragraph is of Mr. Miller in a Halloween costume; that Mr. Miller's body was fully covered in that photo; that this photo was innocuous and non-sexual in nature and sent to Plaintiff and other close friends privately in or about October 2005. Defendants also state that it was Plaintiff's idea to appear in the video presentation referenced in paragraph "31" of the Complaint; that Plaintiff produced and directed this video, in which Plaintiff cast himself in the role of a mature woman who wanted to be an egg donor; that it was Plaintiff's idea to show this video at the Surrogacy/Client conference in May 2006. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "31".

32.    Defendants deny the allegations set forth in paragraph "32".

33.    Defendants deny the allegations set forth in paragraph "33".

34.    In response to the allegations set forth in paragraph "34" and footnotes, Defendants state that Mr. Miller briefly occupied a third bedroom in Plaintiff's apartment for four months, which had been left vacant by one of Plaintiff's two roommates; that Plaintiff and his remaining roommate, Scott Wier, expressed to Mr. Miller that they were very happy that Mr. Miller was

occupying that room; and that Mr. Miller fully paid Plaintiff the agreed upon monthly rent of $1000 for the room during the time that Plaintiff allowed Mr. Miller to occupy that room. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "34".

35.      Defendants deny the allegations set forth in paragraph "35".

36.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained within paragraph "36".

37.      In response to the allegations set forth in paragraph "37", Defendants state that Mr. Miller allowed Plaintiff to occupy a room in Mr. Miller's home in Los Angeles whenever Plaintiff requested; that at all relevant times, Mr. Miller shared his home with his long-term partner; that Plaintiff never complained about staying in Mr. Miller's home except to complain that the guest room bed was not good for Plaintiff's back and that, as a result, beginning in March 2007, Plaintiff began to stay at hotels in Los Angeles with Mr. Miller's encouragement. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "37".

38.      In response to the allegations set forth in paragraph "38", Defendants state that due to Plaintiff's increasingly erratic and volatile behavior, including various confrontations with several of GG/FF's employees, Mr. Miller and other members of GG/FF's management advised Plaintiff that many of GG/FF's employees had expressed to them that they were fearful of working with Plaintiff and that Plaintiff's behavior was creating a hostile working environment; that on one occasion, Mr. Miller stated to Plaintiff that he thought he had "anger management issues." Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "38".

39.     In response to the allegations set forth in paragraph "39", Defendants state that Mr. Miller expressed to Plaintiff on numerous occasions that he was concerned about his drug dependency problem and that he should seek treatment for it. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "39".

40.     In response to the allegations set forth in paragraph "40", upon information and belief, Mr. Miller may have requested that Plaintiff clarify his intentions in writing regarding his future working relationship at GG/FF. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "40".

41.     Defendants deny the allegations in paragraph "41" and aver that, at all relevant times, Plaintiff has affirmed that GG/FF was not his employer, including in a January 2007 bankruptcy petition, in which Plaintiff declared under oath that he was "self-employed."

42.     In response to the allegations set forth in paragraph "42", Defendants state that for several days in June, 2007, and after Plaintiff voluntarily abandoned his position with GG/FF, Plaintiff refused to give Mr. Miller information regarding access to his own personal property and to GG/FF's company property that Mr. Miller feared Plaintiff was unlawfully withholding at his home office and apartment; that because of Plaintiff's refusal to provide Mr. Miller with information about the whereabouts of his or GG/FF's property, Mr. Miller mentioned to Plaintiff that he was considering contacting the building management of Plaintiff's apartment building to gain access to Mr. Miller's personal effects and to GG/FF's company property; that Mr. Miller expressed to Plaintiff that he was concerned about the impact that an investigation might have upon Plaintiff. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "42".

43.     Defendants deny the allegations as set forth in paragraph "43".

## AS TO SECTION ENTITLED "RELIGIOUS DISCRIMINATION"

44.     Defendants deny the allegations as set forth in paragraph "44".

45.     In response to the allegations set forth in paragraph "45", Defendants state that Landmark Education is an international training and development company that delivers educational programs to the general public for a one time tuition fee; that these educational training programs are entirely non-religious, non-spiritual and non-theological in nature, design and purpose; that Landmark Education was formed in 1991 and is not a progeny of Werner Erhard or the "est training",  which was terminated in 1984. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "45".

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the assertions in paragraph "46" except to deny that Landmark Education's seminars invoke a religious experience.

47.     Deny the truth of the assertions in paragraph "47".

48.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the assertions in paragraph "48", except deny that Landmark Education has religious characteristics, theological implications or "tells its congregation how to live" or that Landmark Education has a congregation.

49.     Defendants neither deny nor admit the assertions set forth within paragraph "49" and aver that the document referenced in that paragraph speaks for itself.

50.     Defendants deny that Landmark Education is a "religion" as asserted in paragraph "50".

51.     Defendants deny that Mr. Miller forced Plaintiff to attend Landmark Education seminars, deny that Mr. Miller stated to Plaintiff that GG/FF supports Landmark Education's "philosophy" and aver that Plaintiff expressed to Mr. Miller on numerous occasions his eagerness to enroll himself and his then boyfriend, Chas Cipriano, in Landmark Education's programs, including by email sent in 2004 prior to Plaintiff becoming a consultant for GG/FF.

52.     Defendants deny the allegations set forth in paragraph "52" and accompanying footnotes and aver that Plaintiff never once expressed any Christian religious convictions, beliefs or practices throughout his 16 year friendship with Mr. Miller; that if Plaintiff has a strong "Judeo-Christian belief system founded in the difference between right and wrong", many of his actions do not conform to such beliefs.

53.     Defendants deny the allegations in paragraph "53".

54.     Defendants deny the allegations in paragraph "54".

55.     In response to the allegations set forth in paragraph "55", Defendants state that Plaintiff signed up entirely voluntarily and willingly for Landmark Education's three-day seminar; that never once did Plaintiff communicate to Mr. Miller or any manager or employee of GG/FF that he felt "very uncomfortable" with attending the Landmark Education seminars; that on many occasions, Plaintiff stated to Mr. Miller and others at GG/FF that he derived great benefit from attending the Landmark Education seminars. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "55".

56.     Defendants deny the allegations set forth in paragraph "56".

57.    Defendants deny the allegations set forth in paragraph "57" except to state that, upon information and belief, Plaintiff voluntarily and willingly attended a Landmark Education seminar in 2007.

58.    In response to the allegations set forth in paragraph "58" and accompanying footnotes, Defendants aver that GG/FF's employees and consultants, including Plaintiff, were given the opportunity to attend "coaching sessions" conducted by GG/FF's senior managers following basic management tenets designed to improve performance. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "58".

59.    In response to the allegations set forth in paragraph "59", and the "communication problem" referenced therein, Defendants state that Plaintiff was involved in yet another altercation provoked by Plaintiff with GG/FF's Chief Operating Officer, Teo Martinez. Other than expressly stated herein, Defendants deny the allegations set forth in paragraph "59".

60.    Defendants deny the allegations set forth in paragraph "60" except to state that upon information and belief, and unbeknownst to Mr. Miller or Defendants at the time, Plaintiff voluntarily enrolled himself in a Landmark Education seminar geared towards improving communication.

61.    Defendants deny the allegations set forth in paragraph "61" except to state that they lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Plaintiff left a Landmark Education course "after the first day" or the reasons that may have motivated Plaintiff to leave that course.

62.    Defendants deny the allegations set forth in paragraph "62".

63.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the assertions set forth in paragraph "63" and do not possess the source of the statements purportedly quoted in that paragraph.

64.    Defendants deny the allegations set forth in paragraph "64".

65.    Defendants deny the allegations set forth in paragraph "65" and aver that Plaintiff never communicated to anyone at GG/FF during his tenure there that he felt that his "independent value system" was becoming "disoriented."

66.    Defendants deny the allegations set forth in paragraph "66".

67.    Defendants deny the allegations set forth in paragraph "67" and assert that they did not terminate Plaintiff's employment but rather that Plaintiff voluntarily abandoned his consulting position with GG/FF.

68.    Defendants deny the allegations set forth in paragraph "68".

69.    Defendants deny the allegations set forth in paragraph "69".

70.    Defendants deny the allegations set forth in paragraph "70".

71.    Defendants deny the allegations set forth in paragraph "71".

## AS TO THE CAUSES OF ACTION

## AS TO FIRST CAUSE OF ACTION
### (Title VII)

72.    In response to the allegations in paragraph "72", repeat and reallege their responses to the allegations contained in paragraph "1" through "71" as if set forth at length here.

73.    Deny the allegations set forth in paragraph "73".

74.    Deny the allegations set forth in paragraph "74".

75.    Deny the allegations set forth in paragraph "75".

## AS TO SECOND CAUSE OF ACTION
### (New York State Human Rights Law)

76.     In response to the allegations in paragraph "76", repeat and reallege their responses to the allegations contained in paragraph "1" through "75" as if set forth at length here.

77.     Deny the allegations set forth in paragraph "77".

78.     Deny the allegations set forth in paragraph "78".

79.     Deny the allegations set forth in paragraph "79".

## AS TO THIRD CAUSE OF ACTION
### (New York City Human Rights Law)

80.     In response to the allegations in paragraph "80", repeat and reallege their responses to the allegations contained in paragraph "1" through "79" as if set forth at length here.

81.     Deny the allegations set forth in paragraph "81".

82.     Deny the allegations set forth in paragraph "82".

83.     Deny the allegations set forth in paragraph "83".

## AS TO THE PRAYER FOR RELIEF

As to the "Wherefore" clause of the Complaint, Defendants assert that it contains the prayer for relief as to which no response is required. To the extent that a response is required, Defendants deny that that there exists any basis in fact or law to support such claims or that Plaintiff is entitled to the remedies or relief sought.

## DEFENSES

Defendants assert that they only bear the burden of proof on those matters set forth herein as affirmative defenses within the meaning of Fed. R. Civ. P. 8(c). Defendants set forth its defenses and affirmative defenses to Plaintiff's claims as follows:

13

## FIRST DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted or the damages sought can be awarded.

## SECOND DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, due to Plaintiff's failure to a) satisfy the jurisdictional prerequisites to suit; b) exhaust administrative remedies; c) satisfy appropriate statutes of limitations; and/or d) satisfy conditions precedent to asserting any or all of the claims.

## THIRD DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, by the doctrines of waiver, laches, estoppel and/or unclean hands, including by virtue of sworn statements made by Plaintiff under oath in prior judicial and administrative proceedings that contradict material assertions of fact made by Plaintiff in the Complaint.

## FOURTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, by the fact that any and all actions taken by Defendants with respect to Plaintiff were based upon legitimate, non-discriminatory, non-retaliatory business reasons totally unrelated to religion or Plaintiff's sex.

## FIFTH DEFENSE

Each and every action taken by Defendants was undertaken in good faith and in full compliance with all applicable laws, rules, and regulations.

### SIXTH DEFENSE

Defendants did not aid, assist, abet, encourage, condone, acquiesce in, ratify or approve any alleged offensive, wrongful or inappropriate conduct or attempt to do so.

### SEVENTH DEFENSE

Plaintiff's claims are barred because: (a) Defendants exercised reasonable care to prevent and correct promptly any alleged harassing, discriminatory or retaliatory behavior; and (b) Plaintiff failed to take advantage of the preventative or corrective opportunities provided for in Defendants' policy against discrimination (including harassment and retaliation), and his failure to do so caused any or all of Plaintiff's alleged damages.

### EIGHTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, by Plaintiff's own actions.

### NINTH DEFENSE

All or part of the damages and relief sought by Plaintiff are not available under the laws upon which the Complaint is based and no act, breach or omission of Defendants either proximately caused or contributed to whatever damages, if any, Plaintiff may have sustained; therefore, Plaintiff is not entitled to any recovery from Defendants.

### TENTH DEFENSE

All or part of Plaintiff's claims are precluded by the United States Constitution.

**ELEVENTH DEFENSE**

Plaintiff's claims for damages are barred in whole or in part by the fact that he failed to mitigate any alleged damages by using reasonable diligence to seek and obtain comparable employment elsewhere.

**TWELTH DEFENSE**

Plaintiff's claims for punitive damages are barred in that Defendants did not act maliciously or with reckless indifference toward Plaintiff, and at all times, Defendants acted in good faith, made good faith efforts to comply with, and had reasonable grounds for believing that they had complied with Title VII, the New York State Human Rights Law and the New York City Human Rights Law, and all other federal, state or local laws.

**THIRTEENTH DEFENSE**

Plaintiff lacks standing to sue for religious discrimination given that Landmark Education is not a religion.

**FOURTEENTH DEFENSE**

To the extent Plaintiff has received other benefits and/or awards attributable to an injury for which he seeks compensation in this case, such benefits and/or awards should offset, in whole or in part, any award he receives here for the same injury.

**FIFTEENTH DEFENSE**

The court should not exercise supplemental jurisdiction over the counts in the complaint that purport to arise under New York State and City statutes.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred in whole by the fact that throughout his tenure with

16

Defendants, he was an independent contractor and hence Plaintiff lacks standing to sue under Title VII or the New York State and City Human Rights Laws.

**SEVENTEENTH DEFENSE**

At all times material hereto, Plaintiff was afforded the rights, privileges and immunities granted pursuant to the laws of the United States and the State of New York.

**EIGHTEENTH DEFENSE**

Defendants are not liable for damages, including liquidated damages.

**NINETEENTH DEFENSE**

Plaintiff did not suffer any injuries as a result of any alleged acts or omissions by Defendants.

**TWENTIETH DEFENSE**

Defendants have no knowledge or means of ascertaining the truth or falsity of the allegations concerning the injuries, sufferings and/or damages alleged to have been sustained by Plaintiff and the same are accordingly denied and strict proof thereof is demanded at the trial of this case.

**TWENTY-FIRST DEFENSE**

Plaintiff named the wrong parties as Defendants and GROWING GENERATIONS, LLC and FERTILITY FUTURES INTERNATIONAL, LLC, who are not parties in interest in this lawsuit, are not liable for any of the alleged unlawful actions.

**TWENTY-SECOND DEFENSE**

Any allegations in the Complaint not otherwise responded to herein are denied.

**TWENTY-THIRD DEFENSE**

Defendants will rely upon any and all further defenses that become available or appear during the discovery or pretrial proceedings in this action, and hereby specifically reserve the right to amend this Answer for the purpose of asserting additional defenses.


**WHEREFORE,** Defendants GROWING GENERATIONS, LLC and FERTILITY FUTURES INTERNATIONAL, LLC respectfully request that the Court:


(a)    Dismiss the Complaint in its entirety with prejudice;

(b)    Award Defendants the costs and expenses of this proceeding; and

(c)    Award Defendants such other and further relief as is just and proper.


Dated:    June 16, 2008
          New York, New York


**LAW OFFICES OF IAN WALLACE, PLLC**


By:    _____/s/_____.
       Ian F. Wallace (IW 3100)
       501 Fifth Avenue, 19th Floor
       New York, N.Y. 10017
       (212) 661-5306

       Attorney for GROWING GENERATIONS, LLC and
       FERTILITY FUTURES INTERNATIONAL, LLC


To:    Walker G. Harman, Jr.
       The Harman Firm, P.C.
       1350 Broadway, Suite 1510
       New York, New York 10018
       (212) 425-2600

Brent Pelton
111 Broadway, 9th Floor
New York, N.Y. 10006
(212) 725-3600

*Attorneys for Plaintiff*